IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STEVEN ERICH, ) | CASE NO. 1:13-CV-1402 |
| ) | |
| Petitioner, ) | JUDGE LIOI |
| ) | |
| v. ) | MAGISTRATE JUDGE VECCHIARELLI |
| ) | |
| ERNIE MOORE, ) | |
| ) | **REPORT & RECOMMENDATION** |
| Respondent. ) | |
| ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the court is the petition of Steven E. Erich ("Petitioner") for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. Erich*, Case No. 11-CR-119 (Lake County, Oct. 28, 2011). (Doc. No. 9-14.) For the reasons set forth below, it is recommended that the petition be dismissed with prejudice.

### I. Relevant Factual Background

The state appellate court reviewing Petitioner's direct appeal recited the following relevant facts:

> On February 11, 2011, at approximately 3:30 p.m., appellant called the Wickliffe Police Department to report that his 16-year-old stepdaughter, T.B., was not at school when he arrived to pick her up. Officer Robert Kuhse responded to the call and met appellant at the Erich family's home. After a brief investigation, T.B. was found at a friend's house, located a short distance from Wickliffe High School. When

the officer encountered T.B., she was visibly upset. Officer Kuhse asked the girl if she wanted to talk, but T.B. began crying uncontrollably. Eventually, T.B. agreed to accompany the officer to the police department where she remained emotionally distraught, but was able to provide officers with an account of several incidents of sexual abuse she had suffered at appellant's hands. According to T.B., appellant drank heavily and was a harsh disciplinarian who, on four separate occasions between mid-August 2010 and January 2011, entered her room in the middle of the night, restrained her and inserted his fingers and tongue into her vagina.

T.B. stated that the first episode occurred sometime between August 16, 2010 and August 22, 2010, near the beginning of her junior year of high school. T.B. asserted she was asleep in her room when she was awakened by appellant opening her bedroom door. Appellant then knelt beside T.B.'s bed, pulled her sweatpants down, and placed his hands between her thighs and digitally penetrated her vagina. T.B., frightened and in pain, tried to move away; appellant, however, pulled the girl closer to him, pulled her pants down further, and, while holding her legs, placed his mouth in her vagina. T.B. kicked appellant in the chest, causing him to fall back. T.B. then wrapped herself tightly in her blanket and appellant eventually left her room.

A little over a month later, between September 27, 2010 and September 30, 2010, T.B. was asleep when she was again awakened by the sound of her door opening. Appellant again situated himself at the side of T.B's bed, pulled her pants down and digitally penetrated the girl. T.B. rolled away from him and fell from the bed. Appellant asked her if she was okay; when T.B. said she was fine, appellant stated he heard a loud bump and wanted to make sure the girl was okay. Appellant left the room and did not return that night.

The next incident occurred between November 29, 2010 and December 5, 2010. Again, T.B. was sleeping when she heard the door open and observed appellant enter her room and sidle to the side of her bed. Similar to the first episode, appellant, while restraining T.B., digitally and orally penetrated the girl. Although she tried to resist, she claimed she did not say anything because appellant was holding her down and she was "already scared of him."

> Finally, sometime between January 1, 2011 and January 9, 2011, appellant again entered T.B.'s room awakening the girl from her sleep. As he settled by the side of her bed, T.B. stated she saw appellant's face and smelled an odor of alcohol on him. T.B. tried to move away from appellant but was unsuccessful. Appellant proceeded to hold the girl down and digitally and orally penetrate her vagina. Although she said nothing, T.B. asserted she eventually kicked appellant in the chest causing him to stumble back and leave her room.
>
> After T.B. had related the episodic abuse to police, officers contacted appellant. . . . During the interview process, appellant told officers that on the evening of February 10, 2011, he caught T.B. attempting to sneak her 19-year-old boyfriend, a young man appellant forbade the girl from seeing, into the family home. Appellant conceded he lost his temper, threatened the boy, and began calling T.B. names. Appellant additionally stormed into T.B.'s room and tore posters and awards from her wall. Appellant's interviews indicate that, after this incident, he was concerned T.B. would react negatively.
>
> * * *
>
> On April 20, 2011, the Lake County Grand Jury returned a 14-count indictment against appellant. [The indictment charged with him seven counts of rape and seven counts of sexual battery.  Prior to trial, the State filed a notice that it intended to introduce evidence that Petitioner had sexually abused T.B. since she was four years old.  (Doc. No. 9-5.)  Petitioner, through counsel, filed a motion to exclude such evidence.  (Doc. No. 9-7.)  The State also filed a motion *in limine* to exclude any evidence related to T.B.'s sexual activities with other individuals, which Petitioner opposed.  (Doc. Nos. 9-8, 9-9.)  In August 2011, the state trial court granted Petitioner's motion to exclude evidence of an ongoing pattern of sexual assault of T.B. by Petitioner, and granted the State's motion *in limine* with respect to evidence related to T.B.'s other sexual activities, except to the extent that Petitioner was permitted to introduce evidence related to his assertion that, in February 2011, he had discovered T.B.'s boyfriend in her bedroom.  (Doc. No. 9-10.)]
>
> * * *

3

> After a trial by jury, appellant was found guilty on all counts alleged in the indictment. . .   After a sentencing hearing, appellant was sentenced to 28 years in prison and labeled a Tier III sex offender.

*State v. Erich*, No. 2011-L-146, 2012 WL 3793393, **1-2 (Ohio App. Ct. Sept. 4, 2012).

## II. Relevant State Procedural History

In his direct appeal, Petitioner argued that he had received ineffective assistance of trial counsel when his trial counsel: (1) failed to cross-examine T.B. regarding her testimony that she had struggled with Petitioner during the sexual assaults; (2) failed to question T.B. regarding her admission, during her testimony, that she had seen a therapist prior to her family moving to Ohio; and (3) failed to subpoena any witnesses; specifically, the three friends whom T.B. had told about Petitioner's sexual abuse, and family members who resided in the family home.  (Doc. No. 9-16.)

In September 2012, the state appellate court affirmed Petitioner's conviction, finding that he had failed to demonstrate either the deficient performance or the prejudice necessary to prevail on a claim of ineffective assistance of counsel. *Erich*, 2012 WL 3793393 at **3-6.  Petitioner appealed to the Ohio Supreme Court and, in his memorandum in support of jurisdiction, reiterated the arguments that he had raised in his direct appeal. (Doc. Nos. 9-19, 9-20.)  In January 2013, the Ohio Supreme Court declined jurisdiction and dismissed Petitioner's appeal.  *State v. Erich*, 981 N.E.2d 886 (Table), 2013-Ohio-158 (Ohio 2013).

## III. Proceedings in This Court

In June 2013, Petitioner, through counsel, filed his § 2254 petition in this Court. (Doc. No. 1.) He argues that he received ineffective assistance of counsel, on the following bases:

> I. Petitioner was deprived of competent assistance because Petitioner's counsel failed to effective cross-cross examine the victim.
>
> Supporting Facts: Petitioner was deprived of competent assistance because Petitioner's counsel failed to competently cross examine the victim regarding important details of the alleged crime. While on the stand, the victim testified that she struggled against Petitioner's sexual advances, at one point kicking him hard enough that he stumbled into the wall in the middle of the night. While a competent counsel would view this as an opportunity to poke a hole in the victim's narrative (namely that such a violent and loud act would not cause any response from a family member in the next room), Petitioner's counsel unreasonably ignored this tangent.
>
> II. Petitioner was deprived of competent assistance because Petitioner's counsel failed to introduce evidence of prior therapy by the accuser.
>
> Supporting Facts: Petitioner was deprived of competent assistance because Petitioner's counsel failed to make any discussion of the victim's prior psychological therapy. . . . Here, failing to produce any questions whatsoever regarding the victim[']s prior therapy creates a deficiency sufficient to prejudice the defense. Prior therapy, particularly psychological therapy, would speak to the victim's credibility. This would be amplified even further given the somewhat suspicious timing of the victim's allegation and the factual circumstances of the case. Failing to question the victim on this issue of credibility was sufficient to prejudice the defense and deprive Petitioner of competent assistance.

> III. Petitioner was deprived of competent assistance because Petitioner's counsel failed to call any witnesses.
>
> Supporting Facts: Petitioner was deprived of competent assistance because Petitioner's counsel failed to call a single witness. . . . [T]he victim stated that she told three of her friends about the rape and sexual battery she endured.  However, not one of these friends was called to the stand by the State to corroborate the victim's story.  The fact that two close friends mentioned by the victim, friends who were allegedly told details of the assault, were not called to the stand by the State creates the logical inference that these witnesses would be damaging to the State's case. This would make it even more reasonable that the defense would wish to present these three witnesses to expose any inconsistencies, or at least shed light on why the State did not want these three young women on the stand.

(*Id*.)  In October 2013, Respondent filed an Answer/Return of Writ.  (Doc. No. 9.) Petitioner did not file a Traverse.  Accordingly, the petition is ready for decision.

## IV. Jurisdiction

A state prisoner may file a § 2254 petition in "the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him."  28 U.S.C. § 2241(d).  The Court of Common Pleas of Lake County, Ohio sentenced Petitioner.  (Doc. No. 9-14.) Lake County is within this Court's geographic jurisdiction.  *See* 28 U.S.C. § 115(a). Accordingly, this Court has jurisdiction over Petitioner's § 2254 petition.

## V. The Merits of Petitioner's Claims

**A.     Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ( "AEDPA") altered

the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. See *Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. See *Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court). A decision is

7

"contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result. *Id.* at 405-06. A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." *Id*. at 520-21 (internal citations and quotation marks omitted). This Court applies this deferential standard of review to the state courts' rulings on Petitioner's grounds for relief.

**B.  Ineffective Assistance of Counsel**

In assessing claims of ineffective assistance of counsel, courts apply the familiar standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both that his counsel's performance was deficient, and that the allegedly ineffective assistance caused him prejudice*:*

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial

8

> whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. Where, as here, a state court correctly identifies *Strickland* as the standard for assessing a petitioner's ineffective assistance claim, in order for the petitioner to receive habeas relief, the state court's ruling must be an unreasonable application of the *Strickland* standard. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("The question is not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether that determination was unreasonable – a substantially higher threshold.") (internal quotation marks omitted). Because the performance and prejudice components of the *Strickland* test are mixed questions of law and fact, they are subject to *de novo* review by a habeas court. *Carter v. Bell*, 218 F.3d 581, 591 (6th Cir. 2000). Federal habeas courts, however, must also employ "a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, ___ U.S. ___, 134 S. Ct. 10, 13 (2013); *see also Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1403 (2011) ("Our review of the [state court's] decision is thus doubly deferential. We take a highly deferential look at counsel's performance through the deferential lens of § 2254(d).") (internal citations and quotation marks omitted).

Here, Petitioner contends that his trial counsel was ineffective in failing to: (1) cross-examine T.B. regarding her testimony that she struggled with Petitioner during the sexual assaults; (2) cross-examine T.B. regarding her testimony that she had previously received psychological counseling; and (3) subpoena any witnesses to

9

testify.  The state appellate court rejected Petitioner's arguments, concluding that he could demonstrate neither the requisite deficient performance, nor the requisite prejudice:

> In this case, the record demonstrates counsel made a tactical decision to discredit T.B.'s testimony by focusing on her failure to disclose the abuse until the day after appellant had scolded and berated the girl for sneaking her boyfriend into the family home.  By doing so, counsel was strategically attempting to demonstrate T.B. had a motive to malign appellant by bringing false charges of abuse. In support of this defense, counsel also aggressively cross-examined the reasonableness of T.B.'s version of the abuse. For instance, counsel called into question T.B.'s motivation for failing to disclose the abuse to her mother. He further questioned why, if she had been sexually abused, she did not do more to generally protect herself from the attacks, e.g., install locks on her bedroom door, fight harder, confront appellant, or make noises to awaken the other family members. Counsel also attempted to create doubt as to T.B.'s fear of appellant when he questioned her why, if she had been repeatedly abused, she continued to permit appellant to take her to and from school and attend family functions with him.
>
> The record demonstrates defense counsel's cross examination was designed to discredit T.B.'s testimony, thereby creating reasonable doubt as to the prosecution's theory of the case.  The means counsel selected to achieve this end were reasonable and his failure to explore other, potentially superfluous, avenues of questioning at trial did not render his representation ineffective.

*Erich*, 2012 WI 3793393 at *5.

In his petition, Petitioner generally contends that, had his trial counsel questioned T.B. regarding the topics identified by Petitioner, or called T.B.'s friends to testify, T.B.'s credibility would have been sufficiently undermined that the jury would not have convicted him.  Petitioner's arguments question his trial counsel's defense strategy.  An attorney's choice of trial strategy, however, has long been a decision to which courts

give substantial deference. *See, e.g., Strickland*, 466 U.S. at 689 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.") (internal quotation marks omitted). Cross-examination, as well as whether to call particular witnesses to testify at trial, fall within the ambit of trial strategy. *See Moss v. Hofbauer*, 286 F.3d 851, 864 (6th Cir. 2002) (finding that defense counsel's decision not to cross examine a witness was a "strategic choice" that was "'virtually unchallengeable' because she made it after considering the relevant law and facts") (quoting *Strickland*, 466 U.S. at 690); *Smith v. Smith*, No. 3:10-CV-1913, 2013 WL 5410125, * 4 (N.D. Ohio Sept. 26, 2013) (Katz, J.) ("In particular, decisions about whether to cross-examine a witness and to what extent to cross-examine are committed to the realm of trial strategy and, unless a petitioner can show that counsel neglected his duty to exercise his discretion, courts must avoid second-guessing trial strategy.")

      Here, the record reveals that trial counsel's choice of strategy was "objectively reasonable" based on the circumstances of the case, and, thus, cannot form the basis for Petitioner to receive habeas relief on his claims of ineffective assistance. *Miller v. Francis*, 269 F/3d 609, 616 (6th Cir. 2001) ("Despite the strong presumption that defense counsel's decisions are guided by sound trial strategy, it is not sufficient for counsel merely to articulate a reason for an act or omission alleged to constitute ineffective assistance of counsel. The trial strategy itself must be objectively reasonable."). As noted by the state court, the record reflects that Petitioner's counsel elected to pursue the strategy of discrediting T.B. by emphasizing that she had a motive to falsely accuse Petitioner of assaulting her after Petitioner discovered her boyfriend in

11

the family home, threw the boyfriend out of the house and became angry with T.B. Counsel questioned T.B. about the incident and the timing of the disclosure on cross-examination. (Trial Transcript ("Tr.") at128-29, Doc. No. 10-2.) Counsel focused on the incident, the subsequent disclosure, and T.B.'s motivation to lie in his closing argument. (Tr. 234-37.) Moreover, Petitioner's trial counsel also attempted to discredit T.B. on multiple other grounds. He aggressively questioned her regarding: her reasons for not disclosing the abuse to her mother or to school officials (Tr. 131-33, Doc. No. 10-2); the fact that she continued to spend time with Petitioner and his family, and permitted him to take her back and forth to school (Tr. 135-37); and the fact that she did not confront Petitioner about the abuse (Tr. 137-38). Given that there was no dispute that the incident with T.B.'s boyfriend immediately preceded T.B.'s disclosure of the abuse to authorities, counsel's decision to emphasize the incident – while also pursuing other grounds to call T.B.'s testimony into doubt – was objectively reasonable.

Further, Petitioner's specific arguments fail to demonstrate that he was prejudiced by the omissions he asserts in his petition. The state court rejected Petitioner's argument that counsel should have cross-examined T.B. regarding whether any noise resulted from her kicking Petitioner into the wall of her bedroom, noting that the issue was not relevant to Petitioner's defense. *Erich*, 2012 WL 3793393 at *4. In addition to speculating that any cross-examination on this topic would have elicited testimony that was helpful to his case, Petitioner's argument fails to consider evidence in the record that other people in the family home were already aware that Petitioner was in T.B.'s room at night. T.B.'s mother testified at trial that Petitioner would "fall asleep in [T.B's] room when he got drunk and fell into her room," and that T.B. felt

12

"awkward" about Petitioner coming into her room at night.  (Tr. at 66, 71, Doc. No. 10-1.)  She testified that she told Petitioner that T.B. was getting too old for Petitioner to fall asleep in her room at night.  (Tr. 70-71.)

Petitioner's contention that his trial counsel could have discredited T.B. by questioning her about her prior psychological counseling also lacks merit.  This argument is speculative.  Petitioner's sweeping generalization that an individual's receipt of counseling automatically undermines his or her credibility is simply not sufficient to demonstrate that he was prejudiced by his trial counsel's failure to pursue this topic on cross-examination.  This is particularly true in light of his trial counsel's strategic decision to pursue a theory of defense – that T.B. falsely accused Petitioner in reaction to the incident with her boyfriend – that was supported by the circumstances of the case.  Accordingly, Petitioner cannot show that he was prejudiced by his counsel's omission of this topic from cross-examination.

Similarly, there is no merit to Petitioner's argument that his trial counsel was ineffective in failing to call T.B.'s friends to testify at trial.  The state appellate court rejected this argument as "fundamentally speculative."  *Erich*, 2012 WL 3793393 at *6.  In his petition, Petitioner contends that the State's decision not to introduce the testimony of these individuals "creates the logical inference that these witnesses would be damaging to the State's case," and, thus, Petitioner was prejudiced by his trial counsel's failure to call them to testify.  (Doc. No. 1 at 8.)  There are multiple reasons that the State may have decided against calling T.B.'s friends to testify, none of which create the inference that their testimony would have supported Petitioner's defense.  For example, prosecutors may have determined that the friends' testimony would have

consisted mainly of hearsay and been inadmissible, *see* Ohio R. Evid. 802; that their testimony merely bolstered T.B.'s testimony; or that they simply would not present well on the stand. There is no evidence that the testimony of T.B.'s friends would have contradicted her allegations or otherwise undermined her credibility. Accordingly, Petitioner's argument continues to be unfounded speculation. Absent specific evidence that the testimony of T.B.'s friends would have assisted in his defense, Petitioner cannot show that he was prejudiced by his trial counsel's decision not to call these individuals to testify.

With respect to each of his grounds for asserting ineffective assistance of counsel, Petitioner fails to demonstrate either that his counsel's performance fell below an objective standard of reasonableness or that he was prejudiced by his counsel's performance. Accordingly, he has failed to overcome the "substantial burden" of establishing ineffective assistance of counsel, *Premo v. Moore*, ___ U.S. ___, 131 S. Ct. 733, 745 (2011), and his claims do not merit habeas relief in this case.

### VI. Conclusion.

For the reasons given above, the petition should be dismissed with prejudice.

Date: February 19, 2014  /s/ *Nancy A. Vecchiarelli*
United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.